No. 23-15256

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CLIFFORD MILLER,

*Petitioner-Appellant,*

v.

FERNANDIES FRAZIER, WARDEN, *et al.*

*Respondents – Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 3:19-cv-00673-MMD-WGC

## RESPONDENTS – APPELLEES' ANSWERING BRIEF

AARON D. FORD
Attorney General
MATTHEW S. JOHNSON
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701
(775) 684-1124 (phone)
(775) 684-1108 (fax)
msjohnson@ag.nv.gov
*Attorneys for Respondents-Appellees*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..........................................................................1

ISSUES PRESENTED.......................................................................................1

STATEMENT OF THE CASE...........................................................................2

STANDARD OF REVIEW ...............................................................................9

   I.    AEDPA Deference on Ineffective Assistance of Counsel Claims..................9

  II.   Ineffective Assistance of Counsel ................................................13

SUMMARY OF ARGUMENT ............................................................16

I. Ground 5: The Federal District Court Correctly Found Miller Failed to Demonstrate the State Court's Rejection Was an Objectively Unreasonable Application of Strickland..........................................................17

    A. The State Court Reasonably Rejected Miller's Claim.................................18

    B. Miller Fails to Demonstrate Deficient Conduct. ..........................................20

    C. Miller Fails to Establish Resulting Prejudice...............................................20

    D. Miller Fails to Demonstrate that the Nevada Court of Appeals' Rejection of Ground 5 Was Objectively Unreasonable. .................................................24

II. Grounds 2 and 4: The Federal District Court Correctly Found That Miller Failed to Satisfy Martinez to Overcome the Default of His Claims that Trial Counsel Was Ineffective for Failing to (Ground 2) Request Conflict Counsel or (Ground 4) to Investigate/Present a Valid Defense Theory at Trial............24

    A.   Miller Fails to Overcome the Presumption That Post-Conviction Counsel Performed Effectively With Respect to Grounds 2 and 4. ........................26

    B.   Miller Fails to Demonstrate a Reasonable Probability that, but for Post-Conviction Counsel's Failure to Raise Ground 2, the Result of the State Post-Conviction Proceedings Would Have Been Different.......................29

       1.   Every Reasonable Attorney Would Not Request Appointment of Conflict Counsel to Represent Miller During the Pretrial Hearing on Miller's Request For a New Attorney. ...................................................31

i

2. If Miller Raised Ground 2 During the State Post-Conviction Proceedings, the Nevada Courts Were Not Required to Presume Prejudice. ..............................................................36
   a. Miller Failed To Demonstrate An Actual Conflict of Interest...........40
   b. Miller Failed to Demonstrate That Any Conflict Actually Affected the Adequacy of His Representation........................................................43
   c. Any Constitutional Violation Based On a Conflict of Interest Was Harmless Under *Brecht*......................................................48
3. If Miller Raised Ground 2 During the State Post-Conviction Proceedings, There is Not a Reasonable Probability That the Nevada Courts Would Have Found Resulting Prejudice. ...................................49

C. Miller Fails to Demonstrate a Reasonable Probability that, but for Trial Counsel's Failure to Raise Ground 4, the Result of the State Post-Conviction Proceedings Would Have Been Different. .............................50
   1. Every Reasonable Attorney Would Not Present a Mental Health Defense After that Defense Failed During the First Trial and Opened Miller Up To Prejudicial Evidence About His Homicidal Ideations During His Military Service. ..............................................................52
   2. There Is No Reasonable Probability That a Mental Health Theory of Defense Would Have Resulted in A Different Outcome At Trial. ........55

CONCLUSION...................................................................................58

STATEMENT OF RELATED CASES ..................................................59

CERTIFICATE OF COMPLIANCE ....................................................59

# TABLE OF CASES AND AUTHORITIES CITED

**Cases**

*Acosta v. Raemisch,*
  877 F.3d 918 (10th Cir. 2017) ............................................................48

*Apelt v. Ryan*,
  878 F.3d 800 (9th Cir. 2017) ..............................................................21

*Atwood v. Ryan*,
  870 F.3d 1033 (9th Cir. 2017) ............................................................23

*Bell v. Cone,*
  535 U.S. 685 (2002) ...........................................................................13

*Brecht v. Abrahamson,*
  507 U.S. 619 (1993) ...........................................................................48

*Briggs v. Grounds,*
  682 F.3d 1165 (9th Cir. 2012 ............................................................12

*Brookhart v. Janis*,
  384 U.S. 1 (1966) ...............................................................................41

*Buck v. Davis*,
  137 S. Ct. 759 (2017) .........................................................................27

*Buckley v. Terhune*,
  441 F.3d 688 (9th Cir. 2006) ..............................................................13

*Carey v. Musladin*,
  549 U.S. 70 (2006) .............................................................................11

*Carter v. Davis*,
  946 F.3d 489 (9th Cir. 2019) ..............................................................41

*Smith v. Robbins*,
  528 U.S. 259, 288 (2000) ...................................................................26

*Cheney v. Washington*,
  614 F.3d 987 (9th Cir. 2010) ..............................................................14

*Coleman v. Alabama*,
    399 U.S. 1 (1970) ........................................................................48

*Cudjo v. Ayers*,
    698 F.3d 752, 762 n.2 (9th Cir. 2012) .................................... 11, 12

*Cullen v. Pinholster*,
    563 U.S. 170 (2011) .................................................................. 14, 16

*Cuyler v. Sullivan*,
    446 U.S. 335 (1980) ........................................ 30, 37, 39, 40, 43, 44

*Daniels v. Woodford*,
    428 F.3d 1181 (9th Cir. 2005) ...........................................................32

*Doganiere v. United States*,
    914 F.2d 165 (9th Cir. 1990) .............................................................14

*Early v. Packer*,
    537 U.S. 3(2003) ................................................................................10

*Fry v. Pliler*,
    551 U.S. 112 (2007) ...........................................................................48

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
    99 F.4th 770 (5th Cir. 2024)..............................................................36

*Grant v. Trammell*,
    727 F.3d 1006 (10th Cir. 2013) .......................................................18

*Harrington v. Richter*,
    562 U.S. 86 (2011) ............................................... 9, 10, 11, 15

*Holloway v. Arkansas*,
    435 U.S. 475 (1978) ..........................................................................44

*Hooper v. Shinn*,
    985 F.3d 594, 631 (9th Cir. 2021)....................................................23

*Jackson v. Virginia*,
    443 U.S. 307 n.5 (1979) ....................................................................10

*James v. Ryan*,
733 F.3d 911 (9th Cir. 2013) ............................................................12

*Jefferson v. State*,
410 P.3d 1000 (Nev. App. 2017).......................................................41

*Jones v. Barnes*,
463 U.S. 745 (1983) ..........................................................................26

*Knowles v. Mirzayance*,
556 U.S. 111 (2009) ..........................................................................32

*Lake Mohave Boat Owner's Ass'n v. National Park Serv.*,
138 F.3d 759 (9th Cir. 1998) ...................................................... 12, 13

*Lindh v. Murphy*,
521 U.S. 320 n.7 (1997) ......................................................................9

*Martinez v. Ryan*,
566 U.S. 1 (2012) ...................................... 8, 17, 24, 25, 26, 27, 30, 37, 50, 51

*McConnell v. Baker*,
426 P.3d 31 (Nev. 2018).....................................................................38

*Mickens v. Taylor*,
535 U.S. 162 (2002) ................................................................ 40, 43, 44

*Miles v. Ryan*,
713 F.3d 477 (9th Cir. 2013) ............................................................18

*Morris v. Slappy*,
461 U.S. 1 (1983) ..............................................................................38

*Padilla v. Kentucky*,
559 U.S. 356 (2010) ..........................................................................14

*Parker v. Matthews*,
567 U.S. 37 (2012) ............................................................................10

*People v. Matthews*,
842 N.E.2d 150 (Ill. App. 2005).......................................................24

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ..........................................................36

*Rhoades v. Henry*,
638 F.3d 1027 (9th Cir. 2011) ..........................................................23

*Rice v. Collins*,
546 U.S. 333 (2006) ..........................................................................12

*Rios v. Rocha*,
299 F.3d 796 (9th Cir. 2002) ............................................................18

*Runningeagle v. Ryan*,
686 F.3d 758 (9th Cir. 2012) ............................................................12

*Runningeagle v. Ryan*,
825 F.3d 970 (9th Cir. 2016) ........................................ 25, 27, 29, 51

*Schell v. Witek*,
218 F.3d 1017 (9th Cir. 2000) ..........................................................41

*Schriro v. Landrigan*,
550 U.S. 465 (2007) ..........................................................................12

*Shinn v. Kayer*,
592 U.S. 111 (2020) ................................................................... 10, 11

*Strickland v. Washington*,
466 U.S. 668 (1984)................... 13-15, 17-21, 23-27, 30, 37, 39, 49, 53, 54, 56

*Taylor v. Maddox*,
366 F.3d 992 (9th Cir. 2004) ............................................................11

*U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*,
64 F.3d 920 (4th Cir. 1995) ..............................................................42

*U.S. v. Del Muro*,
87 F.3d 1078 (9th Cir. 1996) ............................................................42

*U.S. v. Jones*,
482 F.3d 60 (2d Cir. 2006) ...............................................................41

vi

*United States v. Cronic*,
466 U.S. 648 (1984) ....................................................38

*United States v. Moore*,
159 F.3d 1154 (9th Cir. 1998) .........................................32

*United States v. Moyer*,
70 F.3d 121 (9th Cir. 1995) .............................................16

*Williams v. Taylor*,
529 U.S. 362 (2000) ........................................... 10, 11, 12

*Wood v. Allen*,
558 U.S. 290 (2010) ......................................................12

*Wood v. Georgia*,
450 U.S. 261 (1981) ......................................................44

*Woodford v. Visciotti*,
537 U.S. 19 (2002) ........................................................11

*Yarborough v. Alvarado*,
541 U.S. 652 (2004) ......................................................14

*Young v. State*,
102 P.3d 572 (Nev. 2004)................................. 32, 33, 45, 49

**Statutes**

Nev. Rev. Stat. 174.234 .................................................35
Nev. Rev. Stat. 200.050 .................................................57
Nev. Rev. Stat. 200.060 .................................................57

**Other Authorities**

28 U.S.C. § 2253............................................................1
28 U.S.C. § 2254............................................................1
28 U.S.C. § 2254(d) ............................................. 9, 12, 19
28 U.S.C. § 2254(d)(2).....................................................11
28 U.S.C. § 2254(e)(1)......................................................11

## RESPONDENT-APPELLEES' ANSWERING BRIEF

Respondents-Appellees Fernandies Frazier and the Attorney General of the State of Nevada (Respondents) submit this Answering Brief pursuant to Federal Rule of Appellate Procedure 28.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the United States District Court for the District of Nevada denying a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody. 1-ER-2. This Court has jurisdiction pursuant to 28 U.S.C. § 2253.

## ISSUES PRESENTED

1. Whether the Nevada Court of Appeals unreasonably applied *Strickland* when it concluded that Miller failed to demonstrate that trial counsel performed deficiently by not introducing certain mental health evidence at Miller's second sentencing hearing and that trial counsel's performance did not result in prejudice.

2. Whether post-conviction counsel performed ineffectively by not alleging that trial counsel was ineffective for not requesting the appointment of a conflict attorney during the hearing on Miller's motion to substitute counsel after the Nevada Supreme Court

concluded on direct appeal that there was no legal basis to grant the motion and appoint a new attorney to represent Miller at trial.

3. Whether post-conviction counsel performed ineffectively by not raising the ineffective assistance of counsel claim in Ground 4 regarding presentation of a defense at trial when she raised an almost identical claim during the state post-conviction proceedings, and trial counsel's strategic decision prevented the prosecution from introducing evidence about Miller's suicidal and homicidal ideations while serving in the military.

## STATEMENT OF THE CASE

On May 10, 1999, police responded to shots fired at an apartment building in Winnemucca, Nevada. 1-ER-36. They found Miller lying supine on the ground outside of the apartment complex, suffering from a self-inflicted gunshot wound to the head. *Id.* Inside the apartment, they found the deceased bodies of Lisa Jenkins Miller, Miller's estranged wife, and Leon Carlson, Lisa's boyfriend. 1-ER-36-37. Miller shot Lisa in the head and shot Leon in the head and groin. *Id.* Miller survived his attempted suicide and the court found him competent to stand trial for the murders. *Id.*

The evidence adduced at trial showed that Lisa and Miller were married but separated at the time of the homicides, and Lisa and Leon were openly dating. *Id.*

Miller had been stalking Lisa and Leon, driving by Lisa's apartment every day in the week leading up to the murders and again about two hours prior to the murders. 1-ER-74-75. Miller also threatened to assault Lisa and Leon, twice threatened to kill Lisa, and solicited others to assault Leon. 1-ER-75.

On the evening of May 10, prior to the murders, Miller telephoned his father, Clarence Miller, saying that his car had broken down and asking his father to pick him up. 1-ER-37. Clarence drove to the spot Miller indicated but could not locate Miller or Miller's vehicle. *Id.* Clarence later discovered his .45 Colt revolver was missing from his home. *Id.* Police recovered a .45 Colt automatic handgun from the scene of the shooting and recovered a magazine clip matching the handgun from Miller's pants pocket discovered during his transport to the hospital. *Id.* Evidence adduced at trial showed Miller shot Lisa and Leon before turning the gun on himself. *Id.*

Miller testified in his own defense. Miller asserted that he did not enter the apartment with the intent to shoot Lisa or Leon, but to commit suicide in front of them. 22-ER-4470. According to Miller, on May 10, 1999, his estranged wife called him and told him that she and Leon just rented the movie Wild Things. 22-ER-4470. Miller could hear Leon and Lisa laughing on the phone. *Id.* Lisa asked Miller if he remembered what happened after Miller and Lisa watched Wild

Things.  *Id*.  Miller remembered that he and Lisa made love after watching the movie.  *Id*.

According to Miller, after this phone call, he decided to commit suicide and made a tape recording recounting his last will and testament.  *Id*.  Miller had written a suicide note on a previous occasion, 22-ER-4487, and told the jury that he had contemplated suicide on other occasions as well, when he and Lisa were having problems, 22-ER-4489-90.  After the Wild Things phone call, Miller created a rouse to get his father to leave his apartment, stole his .45 caliber handgun, and drove to Lisa's apartment to commit suicide in front of Lisa and Leon to punish them.  22-ER-4472.

According to Miller, he parked a block away, walked to the apartment with the gun, and knocked on the door.  *Id*.  Lisa opened the door, Miller raised the gun, told Lisa to get back, and walked into the apartment.  *Id*.  Lisa and Leon were both fully clothed.  22-ER-4519.  Leon jumped off the floor, rushed toward Miller, grabbed the barrel of the gun, and "the gun went off," shooting Leon in the thigh. *Id*.  Miller told the jury that when he fired the gun, he was afraid that Leon was going to stop him from killing himself.  *Id*.  After being shot, Leon called Miller a "son of a bitch" and Miller shot Leon in the head.  *Id*. at 4476.  Miller spun around and shot Lisa in the head before turning the gun on himself.  *Id*. at 4477.  He testified that he tried to stop himself but he was unable to do so.  *Id*.

During closing arguments, Miller argued that he did not have the intent for first-degree murder. 22-ER-4610-11. He argued that he was suicidal and went to the apartment to kill himself, but when he made the attempt to shoot himself, Leon interfered and the gun discharged during the struggle. 22-ER-4611. According to Miller, after the first shot, he had an internal struggle between his mind and his will that resulted in him shooting Leon and Lisa to death, but he claimed he did not enter the apartment with the intent to kill either one. 22-ER-4611.

At the conclusion of trial, a jury convicted Miller of two counts of First-Degree Murder with Use of a Deadly Weapon and sentenced him to two life sentences without parole. 1-ER-79. This was the second time a jury had convicted Miller of First-Degree Murder. 1-ER-100. The Nevada Supreme Court previously overturned Miller's original judgement of conviction on direct appeal after it found several trial errors. 22-ER-84.

Miller's first trial commenced on July 23, 2001. See 5-ER-493. At the first trial, Miller presented a mental health defense through expert testimony in support of his claim that he only went to the victims' residence to commit suicide but spontaneously killed the victims in the heat of passion. 18-ER-3144-3701. In response to the mental health defense the prosecution obtained Miller's military records and elicited testimony from two mental health experts that when Miller was in the military, he did not just have suicidal ideation but also homicidal

ideation, including thoughts, fantasies, and actions to kill his platoon leader with an axe. 14-ER-2665-69; 14-ER-2875-77.

This evidence was used effectively against Miller by the prosecution during closing arguments to undermine Miller's theory of defense. 18-ER-3615. The prosecution pointed out that one-third of people with suicidal ideations also have homicidal ideations and that Miller had been previously diagnosed in the military with both suicidal and homicidal ideations. 18-ER-3615-16. After fourteen days of trial, the first jury found Miller guilty of both counts of First-Degree Murder with Use of a Deadly Weapon and he was sentenced to life without parole on each count. See 18-ER-253-54; 1-ER-100.

At a status check hearing on November 22, 2004, before the second trial, Miller's initial trial counsel, Mr. Dolan, informed the court that he was leaving the public defender's office and Mr. Myers would take over the case. *See* 1-Supplemental Excerpts of Record (SER)-2. Subsequently, the public defender, Mr. McGuire, took over representation of Miller after Mr. Myers was terminated from his employment. *See, e.g.*, 19-ER-3880. On March 30, 2006, the state district court conducted an extensive hearing regarding Miller's alleged discomfort with Mr. McGuire. *See* 19-ER-3886. The court found no breakdown of the attorney-client relationship existed rising to the level necessitating appointment of new counsel. *See id.* at 3935.

Before trial, Miller, through counsel, filed a motion in limine to preclude the prosecution from introducing evidence about his military records and homicidal ideation while he was in the military, noting that he was not going to present evidence from the two mental health experts during the second trial. 1-SER-21. The prosecution responded that they would seek to admit such evidence if Miller opened the door. 1-SER-26. At a hearing on the motion, trial counsel told the court that Miller did not intend to open that door and would not introduce any evidence that he was of a suicidal temperament or character which would open the door to the military evidence. 19-ER-4423.

After the second trial, Miller timely appealed his conviction and the Nevada Supreme Court affirmed, rejecting Miller's claims that the district court erred by denying his motions for substitute counsel. *See* 1-ER-61.

On January 12, 2010, Miller filed a pro se state habeas petition. 1-SER-36. The state district court subsequently appointed counsel to file a supplemental petition. 2-ER-355. Counsel filed a supplemental petition and requested an evidentiary hearing. *See* 2-ER-329. The state district court conducted an evidentiary hearing on November 9, 2015. *See* 6-SER-1290-1348. Upon review, the state district court denied Miller's pro se and supplemental petitions. *See* 1-ER-36. On October 16, 2019, the Nevada Court of Appeals affirmed the state district court's denial of Miller's petition. *See* 1-ER-29.

Miller filed his initial pro se federal habeas petition on or about September 12, 2012. 3-ER-504-22. He filed a third amended petition on November 23, 2020. 2-ER-217. In Ground 2, Miller alleged ineffective assistance because his attorney "failed to request conflict counsel be appointed to assist Mr. Miller during the pretrial hearing" on his motion to substitute counsel. 2-ER-238. In Ground 4, Miller alleged ineffective assistance because his attorney "failed to investigate Mr. Miller's medical and mental health defense at the time of the offense and present a valid theory of defense." 2-ER-244. In Ground 5, Miller alleged ineffective assistance because his attorney "failed to introduce evidence of Mr. Miller's mental health problems during the penalty hearing." 2-ER-250.

The district court concluded that Grounds 2 and 4 were procedurally defaulted and Miller could not overcome the procedural default of those claims under *Martinez v. Ryan*, 566 U.S. 1 (2012). 1-ER-03. The court concluded that the Nevada Court of Appeals decision on Ground 5 "was neither contrary to nor an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court." 1-ER-17. The court denied a certificate of appealability on all grounds.

This Court granted a certificate of appealability with respect to "(1) whether counsel Steven McGuire provided ineffective assistance at sentencing;" and "(2) whether appellant demonstrated sufficient cause and prejudice to excuse the

procedural default of his claims that counsel McGuire provided ineffective assistance by (a) failing to request the appointment of conflict counsel during a pretrial hearing, or (b) failing to properly investigate and present an adequate defense at trial." Dkt. 8-1 at 1.

## STANDARD OF REVIEW

### I.    AEDPA Deference on Ineffective Assistance of Counsel Claims

This action is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), which limits the authority of federal courts to grant habeas corpus relief to a state prisoner except "where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *See Harrington v. Richter*, 562 U.S. 86, 102 (2011). Miller must demonstrate that the adjudication of Miller's ineffective-assistance-of-counsel claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Section 2254(d) creates a "highly deferential standard for evaluating state court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). This heightened standard reflects the view that habeas corpus is reserved as "'a guard against

*extreme malfunctions* in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (emphasis added). The writ is not available just because a federal court disagrees with a state court decision. *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000).

The phrase "clearly established" "refers to the holdings, as opposed to the dicta, of [the United States Supreme Court]'s decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see also Parker v. Matthews*, 567 U.S. 37, 47-48 (2012) (acknowledging that circuit precedent is not clearly established federal law). This standard does not require citation of Supreme Court cases or even awareness of those cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2003) (emphasis in original). Clarifying this standard, the Supreme Court held that a state decision is "contrary to our clearly established precedent" only if the state court (1) "applies a rule that contradicts the governing law set forth in our cases," (2) "arrives at a conclusion opposite to that reached by this Court on a question of law," or (3) "decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412.

As for the term "unreasonable," that term is not synonymous with "incorrect" or "erroneous." *Williams*, 529 U.S. at 412; *Shinn v. Kayer*, 592 U.S.

111 (2020).  The state court's application of clearly established law must be objectively unreasonable.  *Williams*, 529 U.S. at 409.  The writ can issue only "in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102; *Shinn v. Kayer*, 592 U.S. 111 (2020).  "If this standard is difficult to meet, that is because it was meant to be." *Id.* "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.  Under 28 U.S.C. § 2254(d)'s "highly deferential standard for evaluating state-court rulings demands that state court decisions are to be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  And, if habeas relief depends upon the resolution of an open question in Supreme Court jurisprudence, habeas relief is precluded.  *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

28 U.S.C. § 2254(d)(2) "is a daunting standard—one that will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).  A determination of a factual issue made by the state district court or the Nevada Supreme Court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioners "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cudjo v.*

*Ayers,* 698 F.3d 752, 762 n. 2 (9th Cir. 2012) ; *Briggs v. Grounds,* 682 F.3d 1165, 1171 (9th Cir. 2012).

Under § 2254(d)(2) neither the federal district court nor this Court can set "aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record…." *Rice v. Collins,* 546 U.S. 333, 335 (2006). To meet his burden, a petitioner must do more than demonstrate that reasonable minds reviewing the record might disagree about the factual finding or that permissible alternatives exist. *Id.* "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 300 (2010). To be unreasonable, it is not enough to show that the state court's decision was incorrect or erroneous; the petitioner must show that the decision was objectively unreasonable, "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Petitioners must show that "a reasonable factfinder *must* conclude" that the state court's determination of the facts was unreasonable. *Rice,* 546 U.S. at 341 (emphasis added).

This Court reviews the federal district court's dismissal of Miller's federal habeas petition claims *de novo. Runningeagle v. Ryan,* 686 F.3d 758, 766 (9th Cir. 2012); *James v. Ryan,* 733 F.3d 911, 914 (9th Cir. 2013) (quotation omitted). *De novo* review means a review of the matter "from the same position as the district

court." *Lake Mohave Boat Owner's Ass'n v. National Park Serv.*, 138 F.3d 759, 762 (9th Cir. 1998). This Court may also affirm on any ground supported by the record, even if it differs from the rationale of the district court. *See Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc).

## II.    Ineffective Assistance of Counsel

For a habeas petitioner to prevail on a claim of ineffective assistance of counsel, he must demonstrate that his trial counsel's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the results of the proceeding would have been different. *Strickland*, 466 U.S. at 687. The petitioner must prove both deficient performance and prejudice to the defense. *Bell v. Cone*, 535 U.S. 685, 695 (2002). Failure to meet either prong of the analysis defeats the claim of ineffective assistance. *Strickland*, 466 U.S. at 700.

To prove the first prong, Miller bears the burden of showing counsel's errors were so serious that they failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. *Strickland* requires this Court to presume that counsel exercised reasoned professional judgment in litigating Miller's case, and it is Miller's burden to overcome that presumption. *Id.* at 687-91.

A finding of deficient performance by counsel does not end the inquiry. With respect to the second prong, the *Strickland* Court held that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691.

The Court in *Strickland* addressed a petitioner's burden to establish prejudice thusly: "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. The Court directed the reviewing court to "consider the totality of the evidence before the judge or jury." *Id.* A record with overwhelming evidence will likely be unaffected by errors. *Id.* at 696.

A state court receives "more leeway" when applying general standards to a specific case. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). *Strickland* is one of those general standards. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 688-89). This Court's review of a *Strickland* claim under AEDPA affords a second layer of deference to the state court decision. *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).

Failure by petitioner to prove prejudice is sufficient to deny the claim. *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990).

Surmounting *Strickland*'s high bar is never an easy task. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The petitioner bears the burden to show there is no reasonable argument that he received effective assistance of counsel. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). There are countless ways to provide effective assistance in any given case. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

Review of trial counsel's performance must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689. A court must "reconstruct the circumstances of counsel's challenged conduct" and to "evaluate the conduct from counsel's perspective at the time." *Id*. A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (internal citation omitted). AEDPA review of state court resolution of ineffective assistance of counsel claims is "doubly deferential" because courts

view the "'highly deferential' look at counsel's performance . . . through the deferential lens of §2254(d)." *Pinholster*, 563 U.S. at 190 (internal citations omitted).

## SUMMARY OF ARGUMENT

Miller's cold-blooded deliberate and premeditated murder of his estranged wife and her boyfriend was indefensible. Nonetheless, trial counsel, having the benefit of a previous trial and penalty hearing, made reasonable strategic decisions during the second trial and penalty hearing to try to convince a jury that Miller did not commit first-degree murder and should not be sentenced to life without the possibility of parole.

This Court has "repeatedly refused to second-guess counsel's strategic decision to present or to forego a particular theory of defense when such decision was reasonable under the circumstances." *United States v. Moyer*, 70 F.3d 121 (9th Cir. 1995) (internal quotations and citations omitted). After the unsuccessful first trial, it was reasonable for trial counsel to change approaches and conclude that any benefits of presenting additional testimony and experts about Miller's suicidal thoughts and mental health were outweighed by the danger that such evidence could open the door to prejudicial testimony about Miller's homicidal ideations during the time he served in the military. No reasonable attorney would take that risk where, as here, counsel presented other strong evidence during the

second trial that Miller contemplated suicide before he murdered his estranged wife and her boyfriend. Trial counsel also made a reasonable strategic decision to not open the door to the same military evidence at sentencing. The jury was more likely to conclude that Miller should receive life without parole if it learned that the victims were not the first people he seriously considered killing.

Miller's claim that post-conviction counsel was ineffective for failing to raise a claim related to his motion to substitute counsel after the Nevada Supreme Court rejected the underlying allegations on direct appeal is meritless. Miller did not have a Sixth Amendment right to a different appointed attorney and his trial counsel did not have a constitutional obligation to request that a different attorney represent Miller during the hearing on his motion to substitute counsel.

Miller failed to demonstrate that the Nevada Supreme Court unreasonably applied clearly established federal law by denying Ground 5 and did not satisfy the deferential standards of *Martinez* to overcome the procedural default of the ineffective assistance of counsel claims in Grounds 2 and 4. Accordingly, this Court should affirm the federal district court's judgment.

## I. Ground 5: The Federal District Court Correctly Found Miller Failed to Demonstrate the State Court's Rejection Was an Objectively Unreasonable Application of *Strickland*.

In Ground 5, Miller alleged trial counsel acted ineffectively by failing to introduce mitigating evidence regarding Miller's mental health during sentencing.

2-ER-250-51. Specifically, Miller argues that counsel ought to have introduced evidence regarding the medications Miller was on when he murdered his estranged wife and her boyfriend; his alleged inadequate treatment and monitoring; and his family history of depression and suicide. *Id.*

### A. The State Court Reasonably Rejected Miller's Claim.

The Nevada Court of Appeals rejected Miller's claim, finding Miller failed to establish either deficient conduct or prejudice under *Strickland*. 1-ER-31. Even if a federal court decides that the Nevada Court of Appeals' determination as to one prong is unreasonable, it must also defer to the court's decision on the other prong. *See Miles v. Ryan*, 713 F.3d 477, 490 (9th Cir. 2013); *Grant v. Trammell*, 727 F.3d 1006, 1018 (10th Cir. 2013); *see also Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (failure to satisfy either prong of *Strickland* test obviates need to consider the other).

The court first found no deficient conduct because Miller's counsel's decision was a reasonable strategic decision. As the court stated, "[t]rial counsel's decision not to introduce evidence of Miller's mental health problems and family history of suicide and depression during the penalty phase of the trial was a sound trial strategy because it precluded the State from introducing harmful evidence of his previous suicidal and homicidal thoughts." *Id.*

The court also found that Miller failed to establish prejudice. The court

specifically held that "Miller failed to demonstrate a reasonable likelihood that the results of the penalty phase would have been different if this evidence had been presented." *Id.*

The state court rejection of Miller's claim was not an objectively unreasonable application of *Strickland*. The state court record supports this finding.

Here, as the Nevada Court of Appeals correctly pointed out, Miller's counsel made sound strategic decisions not to introduce Miller's mental health issues during sentencing. During Miller's first trial, his original counsel elaborated substantially upon Miller's mental health issues during sentencing—in fact, his entire closing argument was based on the theory of Miller's mental health issues as the cause of Miller's actions. 19-ER-3843-50. This in turn opened the door for the prosecution to make an extensive pitch during their rebuttal closing argument regarding Miller's homicidal urges regarding his platoon leader in the military and homicidal ideations regarding Lisa. 19-ER-3850-70.

As Miller's counsel during the second trial, McGuire was no doubt aware the first jury returned a sentence of life without parole on both counts after hearing these closing arguments. 19-ER-3873-74. Counsel therefore made the reasonable decision to forego introduction of evidence of Miller's mental health during the second round of sentencing, given that such evidence was likely to be extremely damaging in giving rise to the prosecution's ability to again introduce additional

aggravating evidence. As such, counsel's performance cannot be said to have fallen below an objective standard of reasonableness, and the Nevada Court of Appeals' rejection of Ground 5 did not constitute an unreasonable application of *Strickland*.

## B.    Miller Fails to Demonstrate Deficient Conduct.

Miller failed to demonstrate that trial counsel performed deficiently. The Nevada Court of Appeals expressly stated that "trial counsel's strategic decision was unchallengeable under the circumstances of this case." 1-ER-31.

As detailed above, counsel at the second trial had the benefit of hindsight from the results of counsel performance at the first trial attempting to rely upon the introduction of evidence regarding Miller's mental health during sentencing. It is entirely conceivable that if second trial counsel had introduced Miller's mental health evidence during sentencing, Miller would have argued a claim of ineffective assistance due to opening the door again to the prosecution's evidence despite knowing what happened the first time. Ultimately, trial counsel made a reasonably strategic decision not to introduce mental health evidence during sentencing to avoid even more prejudicial evidence being introduced by the prosecution. Miller fails to establish deficient conduct on the part of second trial counsel.

## C.    Miller Fails to Establish Resulting Prejudice.

Miller also fails to show the Nevada Court of Appeals unreasonably

concluded he failed to demonstrate prejudice. When analyzing prejudice, this Court asks whether there is a reasonable probability that the results of the sentencing proceeding would have been different. *Strickland*, 466 U.S. at 687. Further, the "likelihood of a different result must be substantial, not just conceivable." *Apelt v. Ryan*, 878 F.3d 800, 832 (9th Cir. 2017).

The aggravating evidence the prosecution presented against Miller during sentencing in the second penalty phase was extremely strong. The jury already determined that Miller was guilty of first-degree murder of both Lisa and her boyfriend, Leon. *See* 22-ER-4636-37.

During the penalty phase, the prosecution presented one of Lisa's friends, Sheila Nuttall, who testified regarding the ongoing troubles Lisa had with Miller, including multiple separations before Miller killed her. *See* 23-ER-4695-96. Ms. Nuttall also testified that Miller was violent with Lisa numerous times, leaving bruises visible on Lisa's body. *See id.* at 95-98. She also saw Miller out dancing several days before he killed Lisa—Miller danced with her, gave her a rose and attempted to ask her out. *See id.* at 98-99. While they were dancing, Miller spotted Leon and stated, "He will get his." *See id.* at 99-100.

The prosecution further presented prior testimony from a little girl Lisa used to babysit, who testified that Miller scared her when he hit Lisa and caused her to fall on the table where Lisa and the little girl were doing a puzzle. *See id.* at 106-

11. The little girl also testified that she was scared of Miller because he threatened her, telling her that if she "didn't be quiet that he would throw [her] in the river," and when she told him she could swim, he said he would throw her in and "put some big rocks in [her] shoes." *See id.* at 120.

Additionally, the prosecution presented heartfelt testimony from Leon's best friend, Robert Peterson, as well as Leon's sister, Shawna Jensen, who read the victim impact statements written by Leon's father, Leon's roommate's wife, Leon's other sister, one of Leon's brothers, and Shawna and her husband. *See id.* at 122-38. During this testimony, it came out that Leon's family had already suffered the loss of their oldest son/brother fifteen years previously in a car accident, and it was clear that they were immensely devastated by the further loss of Leon. *See id.* Indeed, Shawna testified that another brother, Randy, was driven to suicide because of the difficulty he had coping with Leon's murder. *See id.* at 4738.

Meanwhile, the potential "mitigating" evidence Miller suggests counsel failed to introduce is comparatively weak. Miller argues trial counsel failed to present evidence regarding his mental health concerns; the "powerful medications" he was allegedly under the influence of the day he murdered Lisa and Leon, his family history of depression and suicide; his antidepressant prescriptions; and his alleged lack of proper monitoring/care for his mental health medications. *See* 2-ER-250-51.

However, even if counsel did introduce this evidence, it would have had only minor mitigating impacts, if at all, as demonstrated by Miller's prior sentence following the first penalty hearing. Such evidence is just as likely to have cut against Miller. *See Hooper v. Shinn*, 985 F.3d 594, 631 (2021) (finding that with respect to proposed medical evidence, "not only could it have opened the door for the prosecution to retain an expert in rebuttal . . . but also, Dr. Heilbronner's conclusion is speculative."). Speculative evidence such as Miller's alleged mental health issues potentially impairing/impacting him the day of the murders is insufficient to establish prejudice. *See id.* (citing *Atwood v. Ryan*, 870 F.3d 1033, 1064 (9th Cir. 2017) (noting that speculation that petitioner had a brain dysfunction or disorder was not sufficient to establish prejudice); *Rhoades v. Henry*, 638 F.3d 1027, 1050 (9th Cir. 2011) ("Speculation about potential brain dysfunctions or disorders 'is not sufficient to establish prejudice.'" (citation omitted)).

Weighing the aggravating factors against the minimal proposed mitigating factors, there is no reasonable probability that information about Miller's alleged mental health issues would have made any difference to the jury's sentencing decision. Applying the "doubly" deferential standard of *Strickland* in tandem with AEDPA, Miller fails to rebut the strong presumption that his second trial counsel's

actions were reasonable and non-prejudicial under the Sixth and Fourteenth Amendments.

**D.    Miller Fails to Demonstrate that the Nevada Court of Appeals' Rejection of Ground 5 Was Objectively Unreasonable.**

The Illinois Court of Appeals appropriately summed up the situation faced by Miller and his trial attorneys: "Ideally, from defendant's perspective, trial counsel would have successfully employed some strategy to achieve his exoneration of all crimes. However, defendant does not identify, and we cannot conceive, what that strategy, realistically, would have been." *People v. Matthews*, 842 N.E.2d 150, 156 (Ill. App. 2005).

No defense would have altered the nature or quantum of evidence presented by the prosecution at Miller's trial in this matter. Even if this Court disagrees with the state court's finding regarding deficient conduct on the part of counsel, Miller cannot satisfy his burden of demonstrating that the state court's application of *Strickland*'s prejudice prong was objectively unreasonable or that any fact was unreasonably determined. Ground 5 is meritless.

**II.    Grounds 2 and 4: The Federal District Court Correctly Found That Miller Failed to Satisfy *Martinez* to Overcome the Default of His Claims that Trial Counsel Was Ineffective for Failing to (Ground 2) Request Conflict Counsel or (Ground 4) to Investigate/Present a Valid Defense Theory at Trial.**

The district court determined that Grounds 2 and 4 are technically exhausted and procedurally defaulted.  1-ER-09.  Miller's argument that he can establish

good cause and prejudice to overcome the procedural default because post-conviction counsel was ineffective under *Martinez v. Ryan*, 566 U.S. 1 (2012), lacks merit. Dkt. 11 at 24.

Miller fails to demonstrate that he can overcome the default. Under *Martinez*, "a petitioner must show that appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016) (internal citations and quotation marks omitted). "Construing *Martinez*, [this Court] held that, to fulfill this requirement, a petitioner must show not only that PCR counsel performed deficiently, but also that this prejudiced the petitioner, i.e., that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Id*. "Although the prejudice at issue is that in PCR proceedings, this is a recursive standard." *Id*. "It requires the reviewing court to assess trial counsel's as well as PCR counsel's performance." *Id*. "This is because, for [this Court] to find a reasonable probability that PCR counsel prejudiced a petitioner by failing to raise a trial-level IAC claim, [it] must also find a reasonable probability that the trial-level IAC claim would have succeeded had it been raised." *Id*.

*Martinez* applies only to initial-review collateral proceedings, not to any other proceedings. 566 U.S. at 16. Moreover, it is limited to only claims of ineffective assistance of trial counsel. *Id*. at 17. To the extent that Miller seeks to establish cause and prejudice for other types of claims or based on other proceedings, he is not entitled to relief and cannot overcome default based on *Martinez*. *Id*.

### A. Miller Fails to Overcome the Presumption That Post-Conviction Counsel Performed Effectively With Respect to Grounds 2 and 4.

A petitioner establishes deficient performance under *Strickland*, and therefore *Martinez*, not by simply by alleging that post-conviction counsel failed to present what the petitioner believes to be a "substantial" claim of ineffective assistance of counsel. *Strickland* requires more; it requires this Court to presume that counsel exercised reasoned professional judgment in litigating petitioner's first state post-conviction petition. It is petitioner's burden to overcome that presumption. *Strickland*, 466 U.S. at 687-91.

In that context, this Court must presume that post-conviction counsel exercised reasoned professional judgment in litigating the case "to maximize the likelihood of success" on post-conviction review. *Cf. Smith v. Robbins*, 528 U.S. 259, 288 (2000). ("In *Jones v. Barnes*, 463 U.S. 745 (1983), we held that appellate counsel who files a merits brief need not (*and should not*) raise every nonfrivolous claim, but rather may select from them in order to maximize the likelihood of

success on appeal.") (emphasis added). In the appellate context, *Strickland* places a dramatically heavier burden on the petitioner challenging the performance of an attorney that filed a merits brief on appeal, than an attorney filing an *Anders* brief indicating counsel could not identify any non-frivolous claims to raise on appeal such as filed in *Martinez*. *Id*. And the Supreme Court has indicated that the same standard should govern review of post-conviction counsel's performance. *See Buck v. Davis*, 137 S. Ct. 759, 769 (2017) (noting that the claims post-conviction counsel presented "were all frivolous or noncognizable" when applying *Martinez*).

Because *Strickland* deference regarding an attorney's performance is based upon counsel's perspective at the time of his actions, 466 U.S. at 689, this Court must evaluate post-conviction counsel's performance from the view that trial counsel is also presumed to have exercised reasonable judgment in deciding how to litigate a case. Miller fails to overcome the presumption that post-conviction counsel exercised reasonable judgment in deciding how to litigate this case. *See Runningeagle*, 825 F.3d at 982 (explaining the second requirement of *Martinez v. Ryan*).

Post-conviction counsel did not have an obligation under *Strickland* to raise Grounds 2 and 4 instead of or in addition to the nine claims counsel actually raised in the supplemental state post-conviction petition. 2-ER-329. A reasonable attorney could conclude that focusing on the other claims raised in the

supplemental state post-conviction petition was the best approach to obtain relief for Miller.

Post-conviction counsel made a reasonable decision not to pursue Ground 2, regarding the failure to request conflict counsel, during the post-conviction proceedings. On direct appeal, the Nevada Supreme Court rejected all of Miller's claims about his motions to substitute counsel and concluded that Miller could not satisfy the legal requirements to obtain a different appointed attorney. 1-ER-62-63. A reasonable post-conviction attorney could conclude that, in light of the Nevada Supreme Court's decision on direct appeal, a claim that trial counsel failed to request conflict counsel, like Ground 2, would be denied and counsel should focus on presenting different claims.

As for Ground 4, in ground 1 of the supplemental state petition, Miller's post-conviction counsel actually raised an almost identical claim to that raised in his federal petition in Ground 4. Post-conviction counsel alleged that trial counsel was ineffective in defending the case because he failed to put on a mental health defense which included the evidence that was presented during the first trial along with evidence involving Miller's prescription medications. 2-ER-334-35. In ground 2 of the supplemental state petition, counsel alleged that defense counsel was ineffective for failing to investigate the same mental health defense and to present evidence from mental health experts and other witnesses about Miller's

prescription drugs. *Id*. Miller's post-conviction counsel even obtained funds to retain a mental health expert in support of his petition and obtained an evidentiary hearing to support of Miller's claims. 1-SER-126.[1] Counsel cannot fall below an objective standard of reasonableness for actually raising a claim Miller alleged he omitted.

Even if there are some differences between the claims raised in the state post-conviction petition and in the federal petition, counsel did not fall below an objective standard of reasonableness for omitting Ground 4. Even if post-conviction counsel did perform deficiently, that performance did not result in prejudice because those claims would fail on the merits, and Miller therefore cannot establish cause or prejudice.

**B.   Miller Fails to Demonstrate a Reasonable Probability that, but for Post-Conviction Counsel's Failure to Raise Ground 2, the Result of the State Post-Conviction Proceedings Would Have Been Different.**

In order for this Court to "find a reasonable probability that PCR counsel prejudiced a petitioner by failing to raise a trial-level IAC claim, [it] must also find

---

[1] The federal district court conclusion that "factual support" in Ground 4 had fundamental differences with the claims raised by state post-conviction counsel in the state post-conviction proceedings is belied by the record. 1-ER-114-15. Ground 4 relies almost exclusively on evidence presented during the first trial, 2-ER-244-50, and state post-conviction counsel explicitly argued in the supplemental petition that trial counsel was ineffective for failing to "present mental health evidence consistent with his client's defense at both the trial and penalty phase of the [first] case." 2-ER-337.

a reasonable probability that the trial-level IAC claim would have succeeded had it been raised." *Runningeagle*, 825 F.3d at 982. Importantly, when conducting the *Martinez* analysis, this Court asks whether the trial-level IAC claim would have succeeded in *Nevada* courts, under Nevada interpretations of federal constitutional law, not whether it would have succeeded in federal court under Ninth Circuit precedent. *Id*. The Nevada Supreme Court already rejected Miller's claims related to his motions to substitute counsel on direct appeal. Ground 2 would not have succeeded had it been raised before the Nevada courts.

In Ground 2 of his third amended federal habeas petition, without citing to any case law, Miller alleged that his trial counsel was ineffective for failing to request the appointment of conflict counsel to represent him during a pretrial hearing on his request for a new attorney. 2-ER-239-43. He alleged that, but for the absence of conflict counsel to advocate for him during the pretrial hearing on his request for new counsel, the results of the trial would have been different because a different trial attorney would have represented him at trial. *Id*. After Respondents answered, Miller cited supporting case law and presented a new argument in support of Ground 2 in his reply for the first time. 2-ER-105.

For the first time in his reply, Miller argued that the court should presume prejudice prong of *Strickland* under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), because trial counsel had a conflict of interest during the hearing. 2-ER-21.

The federal district court considered and rejected both arguments. It concluded that Miller failed "to demonstrate that [trial counsel] had an actual conflict of interest that adversely affected his performance and the circumstances do not warrant a presumption of prejudice." 1-ER-12. And it concluded that Miller failed to demonstrate that, "the outcome of the trial would have been different." *Id*. Finally, the district court rejected Miller's cause and prejudice arguments and concluded that state post-conviction counsel was not ineffective for not asserting Ground 2. 1-ER-3. This Court should affirm the district court's decision to deny Ground 2.

> **1. Every Reasonable Attorney Would Not Request Appointment of Conflict Counsel to Represent Miller During the Pretrial Hearing on Miller's Request For a New Attorney.**

Trial counsel did not fall below an objective standard of reasonableness by failing to request appointment of "conflict counsel" to represent Miller during a pretrial hearing on Miller's request for a new attorney. 2-ER-238-242.

In a handwritten pro se letter to the state district court dated March 13, 2006, Miller expressed his dissatisfaction with his trial attorney and requested new counsel. 2-ER-371-72. At a hearing held on March 30, 2006, Miller affirmed that his reasons for requesting a new attorney were that he did not believe trial counsel had his "best interests at heart" and that he was "not happy with the way that [trial counsel was] proceeding with the preparation of the case." 19-ER-3893. Miller

told the Court that the primary reason he wanted to dismiss his trial attorney was because "he made a statements towards me or he believed if I got first degree he would consider that a win since that is what everybody is expecting me to get." 19-ER-131.

During the hearing, the prosecution directed the trial court to the requirements for a request for substitution of counsel under Nevada law. 19-ER-3895-96 (citing *Young v. State*); *see Young v. State*, 102 P.3d 572, 576 (Nev. 2004) (outlining the three factors: "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion."). The trial court then canvassed Miller and his trial attorney based on those *Young* requirements. *Id.*

Nothing in *Young* requires trial counsel to request appointment of a different attorney to represent a defendant during a hearing on the defendant's request for substitution of counsel under Nevada law. And even under this Circuit's jurisprudence, which does not establish the prevailing professional norms for attorneys in Nevada, *see Knowles v. Mirzayance*, 556 U.S. 111, 126 (2009), trial counsel does not have a duty to request conflict counsel for the hearing where the inquiry takes place. *See*, *e.g. Daniels v. Woodford*, 428 F.3d 1181, 1200 (9th Cir. 2005); *United States v. Moore*, 159 F.3d 1154, 1159 (9th Cir. 1998).

The court in *Young* acknowledged that it could be necessary for the district court to "invade the attorney-client privilege," and that "the district court's respect

for the privilege should not prevent it from engaging in a genuine inquiry into the quality of defense counsel's representation." *Young*, 102 P.3d at 578. The *Young*-inquiry conducted by the trial court was not an inquiry into trial counsel's performance as Miller alleges, Dkt. 11 at 30, but an inquiry into whether there was a breakdown of the attorney client relationship between Miller and trial counsel such that a refusal to substitute counsel violated his Sixth Amendment rights. *See Young*, 102 P.3d at 576.

In response to the trial court's *Young*-inquiry, trial counsel told the court that Miller wanted him to proceed with an involuntary manslaughter theory that conflicted with the Nevada Supreme Court's decision addressing the first trial which would likely prevent an instruction on involuntary manslaughter at the second. 19-ER-3898. The Nevada Supreme Court held that Miller was not entitled to such an instruction during the first trial.

Miller claims that trial counsel performed ineffectively by revealing this confidential information about the manslaughter theory his client wanted him to pursue. But the prosecution already knew an involuntary manslaughter theory was a possibility because it was an issue in the first trial and was addressed by the Nevada Supreme Court. 19-ER-3899. Furthermore, trial counsel told the prosecution that he was not going to pursue that theory in the second trial because it was foreclosed by the Nevada Supreme Court. 19-ER-3898. And the

prosecution explained to the court that it already knew that information and had even already prepared a response to such a theory if it was raised at the second trial abecause other case law also prohibited Miller from raising it at trial. 19-ER-3899. Trial counsel did not fall below an objective standard of reasonableness by answering the court's question in this manner. The answers did not cause any harm to Miller's defense.

In response to the trial court's inquiry about the "win" allegation, trial counsel told the court that "my intention was not to tell him that I don't care about his case." 19-ER-3900-01. Counsel explained that in response to Miller's question about whether trial counsel was comfortable representing him, he used the "win" statement to try to communicate to him that representing clients in heinous cases is what he did for a living and he was comfortable representing him. 19-ER-3900-01. Trial counsel told the court that "I didn't express myself to him as well as I wish I had." 19-ER-3901. Trial counsel did not fall below an objective standard of reasonableness for failing to request another attorney before responding to this question from the trial court about Miller's primary reason he wanted a new attorney. Rather, the trial court was required to question trial counsel about this statement because it was the primary reason he requested a new attorney. *Young*, 102 P.3d at 576.

In response to the court's inquiry, Miller told the court that he wanted experts to testify at his trial and trial counsel told the court his investigator was looking into experts. 19-ER-3903. This is not confidential information as trial counsel was required to disclose any experts and their reports he might use prior to trial. Nev. Rev. Stat. 174.234. Trial counsel did not fall below an objective standard of reasonableness for disclosing that his investigator was looking into experts for trial.

After allowing Miller to provide any other arguments or explanation about why he should receive new counsel, the trial court concluded that "I cannot find grounds from what I've heard so far that would disqualify the Public Defender's officer from representing you." 19-ER-3907.

Trial counsel did not cease to serve as an advocate for Miller during the hearing and instead "defend" his own conduct. *Cf.* Dkt. 11 at 36. In fact, even after the trial court made its ruling that Miller was not legally entitled to a new attorney based on his representations, trial counsel encouraged the court to allow Miller to relay any concerns his former attorney, Mr. Myers, had about the representation of the public defender's office to the court, to the extent that it influenced his decision to request a new attorney. 19-ER-3920-21. Trial counsel told the court, "maybe somewhere in there is the grounds he's been looking for since Mr. Myers would be in a position to state whatever legal basis there are."

19-ER-3921. The trial court agreed to let Miller relay that information, but all Miller could tell the court during the hearing was, "I'll be honest with you [sic] Honor Mr. Myers didn't tell me what he would testify in depth about he just told me that there was concerns about the Public Defender's office lack of enthusiasm to represent me and that he would come and testify to that." 19-ER-3923.

Trial counsel's performance during the hearing did not fall below an objective standard of reasonableness. Every reasonable attorney would not request a "conflict counsel" to represent Miller during the hearing. Trial counsel did not have a professional obligation to request another attorney. Because this claim would not succeed on the deficiency prong, the results of the post-conviction proceedings would not have been different if post-conviction counsel raised Ground 2 during the state post-conviction proceedings.

> **2.      If Miller Raised Ground 2 During the State Post-Conviction Proceedings, the Nevada Courts Were Not Required to Presume Prejudice.**

Miller raised his presumption of prejudice argument for the first time in his reply. 2-ER-21. The federal district court considered Miller's argument without giving Respondents an opportunity to respond to Miller's new argument. A district court abuses its discretion where it considers an argument raised for the first time in a reply without giving the other party an opportunity to respond. *See Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th

Cir. 2024); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (finding new evidence presented in reply may not be considered without giving the non-movant an opportunity to respond).  Nonetheless, the district court correctly denied Miller's presumption of prejudice argument.  Because Miller's presumption of prejudice argument would have been rejected if it was raised during the state post-conviction proceedings, Miller cannot satisfy *Martinez* and he is not entitled to relief.

Miller admits in his opening brief that the claim he raised in Ground 2 is a *Strickland* ineffective-assistance-of-counsel claim.  Dkt. 11 at 29 ("The standard for evaluating an ineffectiveness claim for trial counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)"). The test for prejudice under a *Strickland* claim of ineffective assistance of counsel is clear: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Nonetheless, Miller argues that this Court should presume prejudice.  Dkt. 11 at 41.

Miller fails to demonstrate that the Nevada courts, when considering Miller's presumption argument during the state post-conviction proceedings, would disregard the *Strickland* standard and presume prejudice.  Dkt. 11.  Miller's reliance on *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which predated *Strickland* by

four years, does not change the *Strickland* prejudice standard, and Miller points to no Nevada or Supreme Court case that states otherwise.

Moreover, the conflict-of-interest at issue in *Sullivan* involved multiple representations that occurred throughout the trial itself. *Sullivan*, 446 U.S. at 348. This, in part, is why the Court presumed prejudice. *Id*.

While a trial is clearly a critical stage of the proceedings where the Sixth Amendment applies, the Supreme Court has never held that a hearing on a motion to substitute appointed counsel with other appointed counsel, like the hearing at issue in Miller's case, is a critical stage, which the Sixth Amendment applies to. And it is not clear that the Nevada courts, applying their own precedent, would find it to be a critical stage under the circumstances of this case during the post-conviction proceedings. "Absent some effect of challenged conduct on the *reliability* of the trial process, the Sixth Amendment guarantee is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984) (emphasis added); *McConnell v. Baker*, 426 P.3d 31 (Nev. 2018) (concluding conflicts of interest that are "irrelevant to any issue of consequence" do not violate the Sixth Amendment). A defendant does not have a right to a "meaningful attorney-client relationship" under the Sixth Amendment. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

Miller's trial counsel did not represent another client during the hearing on his request to substitute counsel and the conflict alleged by Miller did not occur

during his trial. Miller fails to explain how any alleged conflict during the substitution of counsel hearing effected the *reliability* of the trial in his case or is relevant to any issue of consequence related to his subsequent conviction. If the hearing did not affect the reliability of the trial, it was not a critical stage that implicated the Sixth Amendment. *Id*.

Finally, Miller "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348 ("for example, the record showed that defense counsel failed to cross-examine a prosecution witness whose testimony linked Glasser with the crime and failed to resist the presentation of arguably inadmissible evidence."). This is not the question answered under the first prong of *Strickland*. 466 U.S. at 688. Only when a defendant "shows that a conflict of interest actually affected the adequacy of his representation he need not demonstrate prejudice in order to obtain relief." *Sullivan*, 446 U.S. at 348.

"Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Sullivan*, 446 U.S., at 350, 348). Miller failed to demonstrate that there was an actual conflict of interest and he failed to demonstrate that any conflict actually affected the adequacy of his representation.

### a. Miller Failed To Demonstrate An Actual Conflict of Interest.

In order to establish a constitutional violation based on a conflict of interest under the Sixth Amendment, a defendant must demonstrate an "actual conflict of interest." *Sullivan*, 446 U.S. at 350. "[T]he possibility of conflict is insufficient." *Id*. The Supreme Court did not decide whether the circumstances involving multiple representation in *Sullivan* amounted to an actual conflict or just presented the possibility of a conflict. 446 U.S. 335, 350. The Supreme Court explained that *Sullivan* does not clearly establish or even support an expansive application of its rule beyond multiple concurrent representation cases where counsel is actively representing conflicting interests. *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). And where the trial court does not make an inquiry into a potential conflict, it is often "harder for reviewing courts to determine conflict and effect." *Id*. at 173. The trial court did not inquire into whether an actual conflict existed during the hearing on Miller's motion to substitute counsel.

This case does not involve multiple concurrent representation and trial counsel was not actively representing conflicting interests during the hearing on his motion to substitute counsel. Miller's letter to the court complaining about his trial attorney, which the trial court treated as a motion to substitute counsel, did not create an actual conflict of interest for his trial attorney. If such complaints and motions were all that was required to create a conflict under the Sixth Amendment,

defendants could routinely force trial courts to appoint new attorneys. Neither the Supreme Court nor the Nevada appellate courts have ever held that a motion to substitute counsel or complaints like those in Miller's letter and those made during the hearing create an actual conflict of interest.

The Supreme Court "has never [even] held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019). To the contrary, the Nevada appellate courts have held that client complaints like a bar complaint, by itself, does not create a conflict of interest that can render counsel's representation of a defendant ineffective and that "courts are, and ought to be, more suspicious about concluding that a constitutional violation has occurred" when, as here, an "alleged conflict is initiated by the actions of a defendant." *Jefferson v. State*, 410 P.3d 1000, 1001, 1004 (Nev. App. 2017).

Disputes between Miller and his attorney about the theory of defense did not create an actual conflict of interest. "Decisions that are committed to the judgment of the attorney and not the client" do not deprive a criminal defendant of Sixth Amendment right to conflict-free counsel. *See Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000); *see also Brookhart v. Janis*, 384 U.S. 1, 8, (1966) ("[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval"); *U.S. v. Jones*,

482 F.3d 60, 75 (2d Cir. 2006) (finding where defendant claimed that his attorneys had a conflict of interest because defendant disagreed with his attorneys "as to tactics," defendant "has not shown an actual conflict of interest").

Miller did not have a Sixth Amendment constitutional right to have an advocate pursue his request for a different appointed attorney. Nonetheless, his trial attorney still did not cease to represent Miller's interests and had no other conflicting interests with Miller. Miller relies primarily on this Court's decision in *U.S. v. Del Muro*, 87 F.3d 1078 (9th Cir. 1996), to argue that prejudice should be presumed, but points to no similar Nevada or Supreme Court holding that would lead a reasonable Nevada post-conviction attorney to believe such an argument would succeed if raised during the state post-conviction proceedings.

The federal district court correctly rejected Miller's *Del Muro* argument, noting that Miller's trial attorney was not required to argue his own ineffectiveness like the attorney in *Del Muro*. 1-ER-10-11. "[A] lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy." *U.S. Dep't of Hous. & Urb. Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 925 (4th Cir. 1995).

Trial counsel still owed a duty of candor to the court, and Miller did not have a Sixth Amendment right to prevent trial counsel from truthfully answering the court's questions about whether grounds for a new attorney existed. Trial

counsel was not "defend[ing]" himself, Dkt. 11 at 40, but merely answering the court's questions truthfully.

In fact, trial counsel requested that the Court explore any and all possible bases for granting the motion, even going so far as to encourage the court to allow Miller to relay any additional concerns, including those of his former attorney, which might be a basis for granting the motion. 19-ER-3920-21. Trial counsel even explored whether another attorney in his office could voluntarily substitute in to make Miller feel more comfortable despite there being no legal basis for such a substitution. 19-ER-3911.

Trial counsel had no vested interest in remaining counsel for Miller. He was a salaried government public defender who would be paid the same salary regardless of how many clients he represented and whether he continued to represent Miller. No Nevada court would find an actual conflict of interest under the circumstances of this case. There is no reasonable probability that the result of the state post-conviction proceedings would have been different if Miller alleged he had an actual conflict of interest with his trial attorney.

> **b.** **Miller Failed to Demonstrate That Any Conflict Actually Affected the Adequacy of His Representation.**

In order to establish a constitutional violation based on a conflict of interest under the Sixth Amendment, a defendant must demonstrate that any conflict

actually affected the adequacy of his representation. *Mickens v. Taylor*, 535 U.S. 162 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). The right to effective assistance of counsel is grounded in the text of the Sixth Amendment which guarantees a defendant the right "to have the Assistance of Counsel for his *defense*." U.S. Const. Amend. VI (emphasis added). "[D]efects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens*, 535 U.S. at 166.

Therefore, the question is whether any conflict during the hearing on the motion to substitute counsel actually affected the adequacy of the defense presented by trial counsel McGuire at the subsequent trial, not, as Miller contends, whether it affected the adequacy of his attempt to substitute his trial attorney with another appointed attorney. Dkt. 11 at 44. In *Sullivan*, the case was remanded to consider whether the conflict affected the attorney's performance during the trial. *Sullivan*, 446 U.S. at 350. And in *Mickens*, the court explained that the inquiry centered around whether "the conflict has significantly affected counsel's performance—thereby rendering *the verdict* unreliable." *Mickens*, 535 U.S. at 173 (emphasis added); *see also Holloway v. Arkansas*, 435 U.S. 475, 476 (1978) (analyzing the affect on the trial); *Wood v. Georgia*, 450 U.S. 261, 274 (1981) (restricting the prospect of habeas corpus relief to a situation where "petitioners can show an actual conflict of interest during the trials or at the time of

sentencing"). Miller cannot demonstrate that any conflict during the hearing on the substitution of counsel actually affected counsel's performance, thereby rendering the subsequent verdict unreliable.

Even if the Sixth Amendment violation depends on whether any conflict actually affected the adequacy of his representation during the hearing on his motion to substitute counsel, rather than the outcome of his subsequent trial, Miller fails to meet his burden.

Miller claims his attorney should have "argue[d] his own ineffectiveness" during the hearing. Dkt. 11 at 43. That is not the inquiry that is required during a hearing on a motion to substitute counsel. The *Young*-inquiry conducted by the trial court is not an inquiry into trial counsel's performance, but an inquiry into whether there was a breakdown of the attorney-client relationship between Miller and trial counsel such that a refusal to substitute counsel violated his Sixth Amendment rights. *See Young*, 102 P.3d at 576. Trial counsel truthfully answered the court's questions to help the court assess whether such a breakdown existed. He had no duty to his client to do otherwise.

Miller faults his trial attorney because counsel did not "call Myers to testify about the Public Defender's Office and their alleged unwillingness to defend Miller." Dkt. 11 at 43. Even if this affected the outcome of the proceedings,

which it did not, there is no evidence supporting Miller's assertion that an actual conflict was the reason Miller's former trial attorney was not called to testify.

To the contrary, trial counsel asked the court to inquire with Miller about what his former attorney told him because "maybe somewhere in there is the grounds he's been looking for." 19-ER-3921. The trial court told trial counsel that if Myers testified, it would question former counsel's motive to testify about the public defender's office because he was involuntarily terminated from his position. *Id*.

This statement from the court, alone, could cause a zealous advocate to not call Myers as a witness. Nonetheless, trial counsel encouraged the court to at least allow his client to communicate to the court what former counsel told him that caused him concern about the office's representation. *Id*. at 3923.

In addition, the court indicated that it would contact former counsel and inquire whether he was available to testify at the hearing. 19-ER-3925. After the recess, the record does not reflect whether Miller's former attorney was available to testify, but it does indicate that Miller and his trial counsel had productive communications together and Miller was considering changing his mind about whether he still wanted to substitute counsel. 19-ER-3931. The trial court did not give trial counsel an opportunity to call additional witnesses or present additional

evidence, but instead, stated its reasons for denying the motion to substitute counsel. *Id*.

Miller cannot demonstrate that any inaction by trial counsel actually affected the outcome of the hearing. Miller himself admitted that Myers "didn't tell me what he would testify in depth about he just told me that there was concerns about the Public Defender's office lack of enthusiasm to represent me and that he would come and testify to that." 19-ER-3923. This is not enough to demonstrate that, if trial counsel decided not to have Myers testify at the hearing, it actually affected the trial court's ruling, especially in light of the trial court's statement that it would question Myers' motive because he was terminated by his employer.

Miller claims his trial counsel "did not aid Miller in explaining what the lack of trust between him and McGuire would mean for the future of McGuire's representation." Dkt. 11 at 43. Again, Miller fails to explain how the absence of an explanation from trial counsel was the result of any conflict of interest. Nor does he describe what explanation trial counsel should have provided or how it would change the trial court's mind about whether to grant the motion for substitution of counsel.

Miller fails to demonstrate that there is anything trial counsel could have done that would have changed the trial court's mind about whether to grant the motion for substitution of counsel. He fails to demonstrate that any conflict

actually affected the adequacy of counsel's representation. There is no reasonable probability that the result of the state post-conviction proceedings would have been different if Miller alleged any conflict actually affected the adequacy of his representation.

   c.   **Any Constitutional Violation Based On a Conflict of Interest Was Harmless Under *Brecht*.**[2]

The *Brecht* standard applies to Sixth Amendment violations that do not pervade the entire criminal proceeding. *See Acosta v. Raemisch,* 877 F.3d 918, 932-33 (10th Cir. 2017) (finding the error harmless where trial court only denied counsel at two hearings and there was no impact on the verdict); *see also Coleman v. Alabama*, 399 U.S. 1, 9-11 (1970) (requiring harmless error review where defendant was denied counsel at the preliminary hearing but the prosecution was prohibited from using anything that occurred at that hearing at trial).

The conflict of interest alleged by Miller only occurred during the hearing on his motion to substitute counsel. Miller is not entitled to federal habeas relief unless he can demonstrate that, even if there was a constitutional error, the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116-17 (2007) (quoting *Brecht*, 507 U.S. at 623). Because the error alleged during the hearing had no effect or influence on determining the jury's verdict, Miller is not entitled to habeas relief.

_____

   [2] *Brecht v. Abrahamson*, 507 U.S. 619, 623, (1993)).

### 3. If Miller Raised Ground 2 During the State Post-Conviction Proceedings, There is Not a Reasonable Probability That the Nevada Courts Would Have Found Resulting Prejudice.

In addition to the presumption of prejudice argument, Miller argued the prejudice prong of *Strickland*. According to Miller, but for the absence of conflict counsel to advocate for him during the pretrial hearing on his request for new counsel, the results of the trial would have been different because a different trial attorney would have represented him at trial. 2-ER-239-43.

Miller fails to demonstrate that if another attorney represented him during the hearing on his motion for substitution of counsel, the trial court would have appointed a different attorney. The trial court conducted a thorough *Young*-inquiry into all of Miller's reasons for wanting a different attorney appointed, questioned the motive of Miller's former attorney who was fired by his employer, questioned Miller's trial attorney about Miller's complaints, and concluded that Miller did not demonstrate that he was entitled to a different appointed attorney under Nevada law or the Sixth Amendment. 19-ER-3887-3939; *Young*, 102 P.3d at 576.

Miller fails to show that another attorney could demonstrate that his allegations about the motivation of the public defender's office to represent him had any substance. Dkt. 11 at 44. Even if a different attorney could have convinced the trial court to appoint a different attorney to represent Miller, he fails to demonstrate that there is a reasonable probability that the result of the trial

would have been different with a different attorney. As Miller admits, there "was no dispute that Miller shot and killed both victims," Dkt. 11 at 11, and no reasonable juror would believe that he lacked the intent for first-degree murder, no matter what attorney represented him, in light of the overwhelming evidence of his guilt.

Therefore, Miller fails to demonstrate resulting prejudice. To the extent Miller cites the Nevada Supreme Court's determination on direct appeal in support of his prejudice argument, Dkt. 11 at 45, the court did not find any error and did not suggest that trial counsel either performed deficiently or prejudiced his client at trial in its decision. 1-ER-61-77. There is not a reasonable probability that the result of the state post-conviction proceedings would have been different if Miller's trial attorney requested a conflict attorney to represent him during the hearing on his motion to substitute counsel. Miller fails to demonstrate the district court erred in rejecting his arguments and concluding Miller failed to satisfy *Martinez* as to Ground 2.

### C. Miller Fails to Demonstrate a Reasonable Probability that, but for Trial Counsel's Failure to Raise Ground 4, the Result of the State Post-Conviction Proceedings Would Have Been Different.

In order for this Court to "find a reasonable probability that PCR counsel prejudiced a petitioner by failing to raise a trial-level IAC claim, [it] must also find a reasonable probability that the trial-level IAC claim would have succeeded had it

been raised." *Runningeagle*, 825 F.3d at 982. Again, when conducting the *Martinez* analysis, this Court asks whether the trial-level IAC claim would have succeeded in *Nevada* courts, under Nevada interpretations of federal constitutional law, not whether it would have succeeded in federal court under Ninth Circuit precedent. *Id*. Ground 4 would not have succeeded before the Nevada courts.

In Ground 4, Miller argues that trial counsel was ineffective for failing to properly investigate and present an adequate defense at trial, and if this ground was raised during the state post-conviction proceedings, it had a reasonable probability of success. This Court can summarily reject this argument because the Nevada courts, in fact, rejected an almost identical claim during the state post-conviction proceedings. 2-ER-344-45.

In Ground 4, Miller faults trial counsel for not presenting any of the evidence about his mental health from the first trial, specifically referring to the testimony of Miller's parents, Dr. Cesnik, Dr. Globus, and Dr. Bittker. Dkt. 11 at 50-56. Miller also faulted trial counsel for not presenting any experts to testify about the medication Miller was taking. *Id*. at 56.

Like Ground 4, in grounds 1 and 2 of his supplemental state post-conviction petition, Miller faulted trial counsel for failing to make a mental health argument that he did not have the requisite intent for first-degree murder, faulted counsel for not presenting evidence about his prescription medications, and faulted counsel for

failing to present mental health evidence "consistent with his client's defense at both the trial and penalty phase" of the first trial, and specifically referred to mental health evidence from his first trial. 2-ER-344-45. Among other evidence, Miller specifically referred to the prior testimony and medical records from Dr. Cesnik, Dr. Globus, and Dr. Bittker, along with the trial testimony regarding Miller's actions. 2-ER-343. After considering post-conviction counsel's arguments, the state district court rejected all of Miller's claims raised during the state post-conviction proceedings, including the claims in grounds 1 and 2. 1-ER-36. Accordingly, the record clearly demonstrates that there was no reasonable probability that the result of the post-conviction proceedings would have been different if Ground 4 was raised.

> **1. Every Reasonable Attorney Would Not Present a Mental Health Defense After that Defense Failed During the First Trial and Opened Miller Up To Prejudicial Evidence About His Homicidal Ideations During His Military Service.**

Miller admits that his trial attorney made a strategic decision not to present a mental health defense based on its lack of success during the first trial and the likelihood that prejudicial evidence about his homicidal ideations during his military service would be introduced. Dkt. 11 at 56-57. But he argues that "this strategy can hardly be said to be reasonable." Dkt. 11 at 57.

It is clear trial counsel was aware of all the relevant law and facts before he decided on his trial strategy because a prior attorney conducted an entire trial

utilizing a mental health defense. Trial counsel's strategic decision is, therefore, "virtually unchallengeable," and there is not a reasonable probability that the Nevada courts would have determined that trial counsel was deficient. *Strickland*, 466 U.S. at 690.

During the first trial, in response to Miller's mental health defense claiming that he only went to the victims' residence to commit suicide but spontaneously killed the victims in the heat of passion, the prosecution obtained Miller's military records and elicited testimony from two mental health experts that when Miller was in the military, he did not just have suicidal ideation but also had homicidal ideation, including thoughts, fantasies, and actions to kill his platoon leader with an axe. 14-ER-2665-69; 14-ER-2875-77. This evidence was used effectively against Miller by the prosecution during closing arguments to undermine Miller's theory of defense. The prosecution pointed out that one-third of people with suicidal ideations also have homicidal ideations, and that Miller was previously diagnosed in the military with both suicidal and homicidal ideations. ER-3615-16.

Miller asserts that because he never acted on his desire to murder his platoon leader or followed through on his homicidal ideas, the evidence would actually help him because it confirmed his long and tragic mental health problems. Dkt. 11 at 57. While actually committing the act of killing someone is certainly an element of murder, Miller's actual claim in his federal petition faults trial counsel for not

using the mental health evidence to undermine a different element—the intent element of first-degree murder.

Previously harboring both suicidal and homicidal ideation would not help Miller convince a jury that, on this occasion, when he actually carried out his homicidal thoughts, he did not have the intent for first-degree murder. Every reasonable attorney would not have pursued the same mental health defense that was pursued during the first trial where it could open the door to the prejudicial military record evidence.

Miller alternatively claims that trial counsel fell below an objective standard of reasonableness because the defense he pursued during the second trial was not better than the defense that failed during the first trial. Dkt. 11 at 57. According to Miller, because he was impeached when he testified in his own defense during the second trial in support of his manslaughter theory of defense, his mental health defense presented during the first trial was better. *Id*.

This Court should not accept Miller's invitation to rely on the "distorting effects of hindsight" to evaluate trial counsel's performance. *Strickland*, 466 U.S. at 689. The truth is that there was no defense that was likely to succeed where, as here, the prosecution presented overwhelming evidence that Miller traveled to the residence with the intent to kill his estranged wife and her lover. It was not unreasonable for trial counsel to decide to present the testimony of the only living

witness to the murder to explain why he did not go to the residence with the first-degree intent to kill the victims.

There is not a reasonable probability that the Nevada courts would rule in Miller's favor on the deficient performance prong if this Ground was presented during the state post-conviction proceedings.

### 2. There Is No Reasonable Probability That a Mental Health Theory of Defense Would Have Resulted in A Different Outcome At Trial.

Miller alleges that the result of the second trial would have been different with a mental health theory of defense because the first trial, in which the jury rejected that defense, had instructional errors, prosecutorial misconduct, and an excluded suicide note. Dkt. 11 at 61. But Miller presents no evidence that, without those errors, the mental health defense theory would have resulted in a different outcome, and those errors did not occur in the second trial where Miller was again convicted.

Miller completely fails to demonstrate that a mental health defense would change the jury's determination during the second trial that the murders were willful, deliberate, and premeditated. In fact, he does not explain how any of the mental health evidence undermined the evidence supporting the jury's conclusion about first-degree murder at all. Dkt. 11 at 60-62. Instead of focusing on what might occur if trial counsel did present the mental health defense, Miller criticizes

what trial counsel did not do and what the district court allegedly failed to consider. Dkt. 11 at 60-61.

But that is not the question under the second prong of *Strickland*. Miller must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *Strickland*, 466 U.S. at 694. Miller briefly discusses the suicide note in his opening brief, but he did not allege in Ground 4 that trial counsel deficiently failed to present the suicide note to the jury. The jury considered the suicide note and still concluded that he was guilty of first-degree murder. In fact, there was plenty of evidence presented during the second trial that Miller was suicidal and the jury still concluded that he was guilty.

According to Miller, at the first trial, he argued that he had a history of depression and suicidal ideation and "was provoked by an irresistible impulse when he walked in on his wife and lover." Dkt. 11 at 18. Miller fails to provide any cogent argument about how being depressed and suicidal caused him to have an irresistible impulse. Dkt. 11. As Miller himself points out, Dkt. 11 at 57, his previous impulses to kill in the military when he was also suicidal were not irresistible. If anything, it was not his depression or suicidal ideation that provoked him to kill, but his anger and jealousy that his estranged wife was sleeping with another man, something that Miller had been aware of for many months.

But even if the depression and suicidal ideation somehow caused an irresistible impulse, Miller fails to explain how this relieved him of culpability for first-degree murder under the circumstances of this case. First, while an irresistible "passion" is relevant to a defense of "voluntary manslaughter" in Nevada, the passion must be caused by either "a serious and highly provoking injury inflicted on the person killing," or "an attempt by the person killed to commit a serious personal injury on the person killing." Nev. Rev. Stat. 200.050. It is unlikely a jury would conclude that the victims inflicted or attempted to inflict such an injury when Miller showed up to their residence unannounced with a gun.

Furthermore, if there is an "interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard," the killing is punished as murder not manslaughter. Nev. Rev. Stat. 200.060. A reasonable juror would likely conclude, based on the evidence presented, that there was a sufficient interval between any provocation which made Miller's killing murder and not manslaughter. If Miller's "Wild Things" story is to be believed, *see* Statement of the Case, *supra*, a substantial period of time elapsed between the phone call and the murder for Miller to hear the voice of reason and humanity.

Furthermore, even though expert testimony on mental health was not presented to the jury during the second trial, the jurors still heard testimony and considered evidence that Miller had suicidal thoughts in the days and months

leading up to the murder. But this evidence that Miller was suicidal did not convince the jury to find him guilty of the lesser-included offense of manslaughter. There is not a reasonable probability that a jury would conclude that Miller's depression and suicidal ideation negated the intent element for first-degree murder if additional evidence was presented.

There is not a reasonable probability that the Nevada courts would rule in Miller's favor on the prejudice prong if this Ground was presented during the state post-conviction proceedings.

## CONCLUSION

In light of the foregoing, Respondents respectfully request this Court affirm the federal district court's denial of Miller's Petition for Writ of Habeas Corpus.

RESPECTFULLY SUBMITTED this 6th day of December, 2024.

AARON D. FORD
Attorney General

By:    /s/ Matthew S. Johnson
MATTHEW S. JOHNSON (Bar No. 12412)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
Telephone:  (775) 684-1100
Fax: (775) 684-1108
msjohnson@ag.nv.gov
*Attorney for Respondents-Appellees*

## STATEMENT OF RELATED CASES

Respondents-Appellees know of no related cases.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and 9th Cir. R. 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points or more and contains 13,438 words.

RESPECTFULLY SUBMITTED this 6th day of December, 2024.

AARON D. FORD
Attorney General

By:  /s/ Matthew S. Johnson
MATTHEW S. JOHNSON (Bar No. 12412)
Senior Deputy Attorney General

# CERTIFICATE OF SERVICE

I certify that I am an employee of the Office of the Attorney General and that on this 6th day of December, 2024, I served a copy of the foregoing **RESPONDENT-APPELLEES' ANSWERING BRIEF** by Ninth Circuit ECF electronic filing to:

C.B. Kirschner
Shelly Richter
Benjamin Gerson
Assistant Federal Public Defender
411 E. Bonneville Avenue, Suite 250
Las Vegas, Nevada 89101


/s/ April Markiewicz